## Case No. 5,467.

### GIVEEN v. SMITH et al.

[1 Hask. 358.][1]

Circuit Court, D. Maine. Sept., 1871.

CIRCUIT COURTS — JURISDICTION — BANKRUPTCY — FRAUDULENT CONVEYANCES — POWER OF DISTRICT COURT TO ORDER SALE OF INCUMBERED PROPERTY — SALE BY ASSIGNEE — BILL AGAINST HOLDER OF INCUMBRANCE — MULTIFARIOUSNESS.

1. The circuit court has original concurrent jurisdiction with the district court to determine the validity of conveyances alleged to be in fraud of the bankrupt act [of 1867 (14 Stat. 517)], and to determine the respective rights of various persons in and to a fund, received by an assignee in bankruptcy from the sale of incumbered property of the bankrupt estate, and held to abide a decision of the court.

2. The district court has power to order the sale of incumbered property of a bankrupt estate discharged of the incumbrance.

3. A sale by an assignee of incumbered property, discharged of the incumbrance, without notice to the holder of the incumbrance of the application for an order of sale, is sustained, the holder of the incumbrance having been present at the sale, and having had ample opportunity to apply to the court for redress, and not having done so, the court having retained a sufficient sum from the proceeds of the sale to discharge the incumbrance on application.

4. In equity, on bill by the assignee against the holder of such incumbrance and the purchasers of the property, who are threatened by such holder with an enforcement of his incumbrance, it is competent for the court to determine the validity of the incumbrance, although the holder of it repudiates all claim to the fund in court, and disavows all liability of the assignee to himself by reason of the sale;

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

and if found to be a fraudulent preference under the bankrupt act, to decree its cancellation, and enjoin its enforcement against both the property and the purchasers thereof.

5. A bill in equity is not multifarious, when brought by the assignee in such case against all parties in interest seeking a determination of the rights of all of them in the premises.

In equity. Amended bill by [Thomas M. Giveen] the assignee of a bankrupt, filed by leave of court granted [Case No. 5,466] against [Joseph Smith] the mortgagee of the stock in trade of the bankrupt and sundry vendees of the same under a title derived from the assignee, who sold the same free of incumbrances under an order of court granted without notice to the mortgagee, seeking to have the mortgage decreed void as a fraudulent preference, and the mortgagee perpetually enjoined from enforcing his mortgage title against the property or the purchasers of the same, or against the funds received from the sale thereof in the hands of the assignee. The bill was taken pro confesso against all the respondents but the mortgagee, who answered, denying that his mortgage was void as a fraudulent preference, and averring that the assignee sold only the right of redeeming the property from the mortgage, and that the same constitutes a valid lien upon the property for the security of the mortgage debt, and disclaiming any intent to hold the assignee responsible for the sale of the mortgaged property, or to assert any lien upon the proceeds of the sale in the hands of the assignee, and denying the jurisdiction of the court in the premises, and asserting that the bill was multifarious. The cause was heard upon bill, answer, and proofs.

William L. Putnam, for orator.

Edwin B. Smith, for respondent Smith.

Before SHEPLEY, Circuit Judge, and FOX, District Judge.

FOX, District Judge. It is certainly a satisfaction to the court, to find this cause, at last, so presented that it will be finally disposed of. The complainant was duly appointed assignee in bankruptcy of E. A. & W. B. Fenderson, who within four months of the commencement of proceedings in bankruptcy against them by their creditors, had, as is claimed by the present bill, given Smith a mortgage on their stock in trade in fraud of the provisions of the bankrupt act. The mortgagee never had the possession of the property mortgaged, but the same was retained by the bankrupts and by them surrendered to the assignee, who obtained from the district court in bankruptcy, without notice to Smith, an order of sale of the stock, which was disposed of to C. J. Walker for $975, Tyler, Lamb & Co. being interested in the purchase. The stock was subsequently sold to Elwell, and by him sold at retail.

This bill is now brought in the circuit court to determine their respective rights against Smith and the various purchasers of the stock.

None of the defendants excepting Smith appeared, and as to them the bill was taken pro confesso. The complainant in his bill alleges, "that Smith at the time of the sale notified the assignee that he claimed to hold said stock by virtue of his mortgage and that he has ever since claimed to hold and has set up said mortgage as a valid lien and claim upon said property; that at the sale and previously thereto, the complainant personally and by his attorney represented to Walker and all other persons present, that said property was free from all incumbrances, and that he expressly sold the same free from all incumbrances, and that he expressly offered to sell and did sell the property itself, and not merely an interest in the property subject to incumbrances, and that Walker relying on said representations and statements, bid on said property and paid complainant $975 as the full value of the same, free of all incumbrances, as was then and there expressly agreed and understood between him and your orator; that complainant fears that Smith may claim a lien on the proceeds of the sale, or that he may commence a suit against the vendees, in which latter event said vendees claim, and as the complainant is advised and believes, they would be entitled to be protected from the fund, or by your orator, as he is advised and believes they have a specific claim against the fund and your orator by reason of the premises, to the extent of any claim, if any there is, against them, or either of them by virtue of said alleged mortgage of Smith; that he has requested Smith not to set up any claim against your orator or any persons claiming under him, with which request Smith refuses to comply, and that by reason of these claims, he is embarrassed and prevented from settling said estate; that notwithstanding the bill of sale to Walker contained no covenants of warranty of title, that the claims of the vendees to be protected against Smith's mortgage are complete and perfect according to the agreement of the parties and the principles governing courts of equity; that the proceeds of the sale are held by the assignee, $700 of the amount being deposited in the savings bank, by order of the district court to abide the result of this cause, which sum is more than the amount claimed by Smith under his mortgage." The case finds that amount is deposited in the savings bank, but there is not in the record any legal evidence of any order of the district court that it should be so deposited.

The bill concludes with an offer to give Smith security to pay his mortgage if found valid, or deposit in court a sum sufficient to cover the same with costs, and prays that the court will determine "whether any of the defendants have any claims as aforesaid on the fund or your orator, and will ascertain and determine whether the mortgage to Smith is or not valid, and if valid the amount due thereon, and after payment of same, to decree and adjudge that none of said defendants have any further lien or claim on your orator or said fund, and that said Smith may be enjoined from setting up said mortgage against your orator or any person claiming through or under him, or by said sale."

The complainant having given bond to pay Smith the amount due on his mortgage if the same should be adjudged valid, a preliminary injunction was granted against him.

Smith in his answer, denies that his mortgage was in fraud of the act, or that the Fendersons were at that time insolvent, and he avers, "that he claims it to be and does still set it up as a subsisting valid incumbrance on the property mentioned therein, made as security for a debt for present considerations otherwise valid; that he is informed and believes that the sale was only of the alleged bankrupt's interest in said stock, and not of the unincumbered property, and that he caused the persons attending the sale of the stock to be notified of his title and of his claim thereon; but he denies that he ever proposed or now intends to institute any suit at law or in equity against the complainant for the sale of said stock made by him in his official capacity, and that since the former hearing he has given him a written engagement to that effect; that he has never made any claim against said assignee on account of his sale of said stock, and never will make such claim; that by the sale the complainant devested himself of all interest in the stock, and hath therefore no right to maintain this bill; that there is no existing enforceable agreement as to this mortgage between the complainant and the other respondents, as the bill of sale contains no covenants of title, and parol evidence cannot be received to contradict or modify its terms; that all the complainant did or could sell was the bankrupt's interest in said property, subject to said mortgage and all legal incumbrances; that Walker and the other purchasers have no right to have their title protected from the proceeds of said sale, nor have they any specific claim upon the fund arising from said sale, and that he has never done aught to prevent the distribution of the assets among the creditors, and that he claims only such rights under the mortgage as belong to a mortgagee after the equity of redeeming the mortgaged property has been sold; and he expressly disavows any claim to the proceeds of said sale by reason of said mortgage, and denies that he has ever claimed or does now claim any lien thereon, all which liens and claims it belongs to the district court to determine."

Walker's testimony proves that at the time he paid for the stock, he notified the assignee that he bought the stock free and clear, and should look to him for indemnity and protection, and if he should have to pay anything on account of Smith's claim, he should demand it of the assignee. The order from the district court to the assignee was to sell the stock; that in pursuance of such order he did sell the absolute property in the stock free of all incumbrances, and that the vendee thus

purchased the same, is from all the testimony beyond question; and it is equally clear, notwithstanding the denial found in Smith's answer, that he was well aware that the stock was thus sold. This fund is now held by the complainant as assignee, partly in the usual bank of deposit, and the residue in the savings bank as a special deposit to abide this controversy; and although Smith in his answer now exonerates both the assignee and the fund from all claim or liability directly to him as the mortgagee, it is evident that he intends to follow the purchaser by a suit at common law the moment he shall be relieved from the injunction he is now under in this cause, and his answer is so drawn, that we can find nothing therein which would debar him from such a proceeding. If successful, the vendee would of course attempt to obtain redress from the assignee. Under these circumstances, shall this protracted, vexatious litigation, the costs and expenses of which must exceed the claim itself, be permitted to continue, or is this court authorized to determine finally in this suit the rights of the respective parties?

The learned counsel for this respondent has with much confidence again urged upon us the objection that the circuit court has not jurisdiction of this cause; that as presented by the bill, the question is, whether any lien exists or can arise against the fund now held by the assignee, and that the district court is alone authorized to determine this question. It is beyond dispute, that under the first section of the bankrupt act, the jurisdiction of the district court extends to "the ascertainment and liquidation of the liens and other specific claims on the assets of the bankrupt," because such is the express language of that section. But we find nothing in the act which vests this jurisdiction exclusively in that court; on the contrary, by the second section of the act, it is provided that "the circuit court shall have concurrent jurisdiction with the district court of the same district, of all suits at law or in equity, which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt, transferable to or vested in said assignee."

In our opinion, the case as made by the bill is directly within the authority and jurisdiction thus conferred on the circuit court. The bankrupts' stock in trade, by them turned over to the assignee, has by the assignee been sold, and a claim is made against this fund by the vendees of the stock, on the ground that this defendant held by a mortgage from the bankrupt an older and better title to the property sold, and by this bill, the assignee has brought before the court all parties who can in any way have any adverse interest in the stock or the proceeds therefrom, in order that their rights may all be ascertained and determined and protected from the proceeds of sale, which in a court of equity are substituted for and held in lieu of the stock itself. This is clearly a controversy between the assignee and the vendees, touching an interest claimed against the estate of the bankrupt. As has been repeatedly decided, the proper remedy to have been adopted in the district court to determine the rights of those parties would be by a bill in equity against the identical parties, respondents in the present cause, and in such suit an appeal could be taken from the decree of the district court to this court. That original concurrent jurisdiction, over these parties and the subject of controversy, exists also in the circuit court, is clear to our minds from the language of the act, as well as from the authorities. See opinions of Lowell, J., in Foster v. Ames [Case No. 4,965], of Clifford, J., in Knight v. Cheney [Id. 7,883], and in Morgan v. Thornhill, 11 Wall. [78 U. S.] 65.

The eighth section of the bankrupt act of 1841 [5 Stat. 446] conferred on the circuit court concurrent jurisdiction with the district court in the very same words as are now found in the second section of the present act. In McLean v. Lafayette Bank [Case No. 8,885], Mr. Justice McLean declares that the jurisdiction vested in the circuit court by this language "is ample, and reaches every possible controversy which can arise in the collection and distribution of the effects of the bankrupt. Of whatever nature his rights may be, the assignee may invoke the jurisdiction of the circuit court for relief."

In Ex parte Christy, 3 How. [44 U. S.] 316, Mr. Justice Story says, "It must be admitted, that under the eighth section (act of 1841), a bill in equity may be brought by or against a creditor in the circuit court to redeem, or foreclose, or to enforce or to set aside such a lien, mortgage, or other security. If it can be, then the lien, mortgage or other security is not saved from the cognizance of the circuit court having jurisdiction in bankruptcy, but the most simple remedies lie there; and although the rights of such creditors are to be protected, they are subject to the entire examination and decision of the court as much as they would be if brought before the court, in the exercise of its ordinary jurisdiction."

Had the district court, under all the circumstances, authority to order a sale of the stock, notice of the application to the court for such order not having been given the mortgagee as required in case of proceedings under the twenty-fifth section of the act? Such notice not having been given, his doings and the authority of the court derive no aid from the provisions of that section, and if valid, they must depend on the general principles of law as administered in courts of equity, in connection with the other provisions of the bankrupt act, as we have heretofore decided in this cause.

In Foster v. Ames, before cited, Judge Lowell has made a very critical examination of the bankrupt act, and he there decided that the district court in bankruptcy may authorize the assignee to sell mortgaged property discharged of the incumbrances. The power of the court to order such sale on petition of the assignee does not depend on section 25 of the bankrupt act, and is not limited by the proviso of that section, but may be exercised, notwithstanding the mortgagee asserts a right of immediate possession of the goods, and intends to bring, or does bring an action for the recovery of possession.

Such sales were ordered by the court in Re Stewart [Case No. 13,418]; Re Barrow [Id. 1,057]. In Re Columbian Metal Works [Id. 3,039], Blatchford, J., held that "the district court has full power to order the sale of encumbered assets in such manner as it chooses to direct." In Huston v. City Bank, 6 How. [47 U. S.] 486, it was decided by the supreme court that under the bankrupt act of 1841, the district court had power to order a sale of the property of the bankrupt under mortgage and make a title free from the mortgage, marshalling and disposing of the proceeds according to the priorities of those interested.

The authority conferred upon the district court to control and dispose of the assets of the bankrupt under the present act, instead of being in any respect diminished or restricted, is in fact more extensive than that conferred by the act of 1841, as will clearly appear from an examination of the several acts; and the court can entertain no doubt that the district court, under its general authority conferred by the bankrupt law, could authorize the sale of encumbered property of the bankrupt, and is not restricted to the authority and manner prescribed in section 35. The only distinction which is perceived between the foregoing cases and the present is, that in those, notice of the application for the order of sale was given to the mortgagee or the lien creditors, whilst in the present case it does not appear, and is not claimed, that such notice was given, the court not being advised at the time of the application that there was this alleged incumbrance. Does this fact of want of notice vary the case and devest the court of its authority, which was otherwise conferred upon it to order the sale of the stock itself? And is the sale for this reason to be restricted to a transfer of the mere equity of redemption of the stock from the mortgage, and not to be held as a transfer of the property unencumbered?

The order of sale as granted by the court May 3d, was to sell at public or private sale the stock itself. It was so advertised in the public prints May 4th. The mortgagee was fully aware of the order of sale, and of its legal effect and authority, as claimed by the assignee. The sale was adjourned from May 15th to the 21st, and again to the 27th, and no steps were taken by the mortgagee to revoke the order; on the contrary he was present at the sale on the 27th, notified the parties of his claim by mortgage, was informed by the assignee that the stock was to be sold unconditionally, free of all incumbrances. The sale having thus been effected and a special deposit made of a portion of the proceeds, sufficient to discharge the amount claimed under the mortgage, and to abide the result of this cause, for the security of the mortgagee, he has been fully protected and can in no way suffer any detriment from the sale, if his mortgage can be upheld, and we think it is now too late, under these circumstances, to raise the objection of want of notice of the application to the court for the order of sale. At most it would have been a merely formal act, and of no possible benefit to the mortgagee, as the district court had full authority, according to the decisions before cited, to order the sale whether the mortgagee assented or not, as the whole matter was in the discretion of the court. In this case, no doubt can be entertained that it was for the interest of all parties to thus dispose of the stock, and the district court we think would have so ordered, although the mortgagee had appeared and offered the petition. If by the sale the vendees have obtained an absolute unincumbered title to the property, and the mortgagee has thereby been devested of all his rights thereto, the proceeds being substituted and held therefor by the assignee subject to all valid liens and claims which existed against the stock itself, what are the rights of the respective parties in this suit?

We are still inclined to hold as we did at the former hearing, that if the mortgagee was the only respondent to the bill, and he by his answer had estopped himself from any claim on the proceeds, or against the assignee, and it did not appear that he had ever made or threatened such a claim, this bill could not be maintained against him; for although by process of law, he had lost his title to the specific property, yet the proceeds were subject to his claim if he chose to assert it for his security, and if he had never claimed any right or interest therein, but legally and in an obligatory manner, disavowed such claim and right, so as to afford full protection to the estate and the assignee, it does not appear equitable that he should be subjected to the trouble and expense of defending this bill. But the case now before us is essentially different. Although by his answer, as we think, he is estopped from maintaining a claim on the fund or assignee, he nevertheless insists on his rights as a mortgagee to follow the property, and it is clear to our minds that such is his purpose. Under these circumstances the vendees claim that they will be injured by the actions of the mortgagee, and will look to the assignee

or the fund for their indemnity. Their claim to indemnity depends wholly on their liability to the mortgagee. In an action against them at common law in favor of the mortgagee, they could defend on both grounds, the invalidity of the mortgage, and also that by the sale under the order of the district court, they had acquired an unincumbered, absolute title to the stock; and in the present cause, we are inclined to the opinion that the complainant is also entitled to the protection of the fund in his hands, and the decree of the court that the vendees have no claim against him or the estate, both because the sale passed to them the absolute title to the property, and because Smith's mortgage was fraudulent and void.

Suppose that the district court, not having given notice to Smith of the petition for order of sale, could not, as against Smith's mortgage if valid, convey to the purchasers an unincumbered title, and that Smith has his election to look to the fund, or follow the property and the vendees, and that his answer is to be deemed an election on his part, to seek his remedy against the vendees. Are they entitled to claim an indemnity from the fund or the assignee? The counsel for the mortgagee contends that they are not, as there are no covenants of warranty of title found in the bill of sale of the stock, and parol evidence is inadmissible to supply such covenants. In our view, the rights of the vendees are not dependent on the question of covenant of title, and whether parol evidence of this nature is or not admissible.

The case most clearly demonstrates that the court ordered the sale of the entire and unincumbered stock. Such was the order in effect. It was "that the stock in trade of said bankrupt be sold." The assignee offered for sale and represented that he did sell the whole stock, the purchaser so understood it and bid for the whole stock, and the bill of sale conveys the stock to him, and the assignee now holds the full amount realized from the sale of the entire and absolute property. This amount is a fund to be distributed; and the question is, whether it shall go to the general creditors of the bankrupt as assets, or whether other parties have a prior and better claim to any portion of it; and this depends on the title of the assignee to the property thus sold by him. If he had a perfect title, then he could dispose of it and confer a valid title to the whole estate and the proceeds and assets of the estate. If he had an incumbered title, a mere equity of redemption, and his sale did not convey anything but the equity, although he undertook to sell the property itself and has been fully paid for it, then his vendees are liable to the holders of the mortgage, and they certainly have a better right to indemnity and protection from the fund, than the creditors have to its distribution among them. Their money has gone to pay for property which the assignee had no right to dispose of.

Whether there are covenants or not in their bill of sale is of no consequence, as the court is bound to refund to them their property, for which they have received no consideration to the extent at least of the failure in that respect.

If the assignee had sold to them a case of boots deposited as a bailment with the bankrupt, and to which the assignee acquired no title, and the vendees had subsequently been required to restore the goods or their value to the owner, can there be any doubt that the district court, although there were no covenants of warranty of title to the vendees, would, on the petition of the vendees, order the assignee to refund to them the amount they had paid for the boots to the assignee, if the proceeds were in the assignee's hands undistributed? A court of equity would never sanction the distribution, as assets, of money thus received by the assignee from sales of property of strangers, especially against the remonstrance of the vendees, when his liability to such persons was clearly established. In the case of In re Hitchings [Case No. 6,542], this principle was acted upon by Cadwalader, J., and the assignee was ordered to refund to the purchaser from the funds in his hands the value of certain articles to which he had not acquired a valid title.

It is apparent that these vendees, or some of them, are to be harassed by Smith with further controversy as to this property, unless he is prevented from so doing by this court; and that if successful, and his action is maintainable, and his mortgage is valid, and the defendants should be mulcted in damages, they will claim indemnity from the fund now held by the assignee, and it is our duty to determine whether Smith has such a valid mortgage as would afford him redress against them, and a recourse by them to these funds; and this depends on whether his mortgage constitutes a fraudulent preference within the provisions of the bankrupt act.

Smith in his answer swears that "it was given in good faith, being a mortgage given as security for a debt for present considerations otherwise valid, &c." We regret to be under the necessity of noticing the apparent recklessness of statement in various parts of this answer in respect to matters within Smith's knowledge, which are not only untrue, but which from all the evidence we are satisfied the respondent must at the time have known to be untrue. This mortgage was not given for any present considerations, given at the time of its execution; but was made on the 17th day of February, 1869, to secure a note given to him by the Fendersons February 1, 1866, payable on demand. So, also, the respondent states in his answer "that he is informed and believes that the sale was only of the bankrupt's interest in the stock, and not of the unincumbered property." We do not question that he was so informed, and we are as certain that with the knowledge he

had of the transaction, that no man of common sense could have believed that the assignee sold merely the equity of redemption of the stock from this mortgage.

Such statements in the answer compel us to receive with doubt and distrust all assertions we find therein contained, which are in conflict with, or not corroborated by other evidence; and as this conveyance was of all the bankrupt's property, to secure a pre-existing debt, and was not in the ordinary course of business, it was prima facie fraudulent, and the burden of its support rests with the respondent. Scammon v. Cole [Case No. 12,432].

We are of opinion, as we announced at the former hearing, that this mortgage was a fraudulent preference and void under the provisions of the bankrupt act. The objection of multifariousness finds no support in any of the authorities. McLean v. Lafayette Bank [Id. 8,885]. Decree for complainant, with costs since September 8, 1870.